**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BOONE BUILT SOLUTIONS, LLC,** | § | **LEAD CASE NO. 23-51763** |
| | § | |
| **DYLAN JAMES HOMES, LLC,** | § | **SECOND CASE NO. 23-51764** |
| | § | |
| **Jointly Administered Debtors.** | § | **CHAPTER 11** |
| | § | **(Jointly Administered Under** |
| | § | **23-51763)** |

**DEBTORSS' PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE**

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

**ARTICLE I**
**INTRODUCTION**

**Identity of the Debtors**

Boone Built Solutions, LLC, et al. ("Debtors") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division on December 20, 2023. The Debtors manages and operates a small commercial construction business. This Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the Debtors, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

**Explanation of Chapter 11**

Chapter 11 is the primary reorganization chapter under the Code. Debtors are a small business and has decided to proceed under Subchapter V – Business Debtors Reorganization ("Subchapter V"). Under Subchapter V, the Debtors are permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

1

## Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the Debtors vote in favor of the plan to be confirmed by the Court.

Confirmation of the plan discharges the Debtors from all its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Class 1 and 6 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Class**. The Class 2, 3, 4 and 5 Claimants are impaired as defined by Section 1124 of the Code. The Debtors is seeking the acceptance of the Plan by Claimants in Class 2, 3, 4 and 5. Each holder of an Allowed Claim in Class 2, 3, 4 and 5 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com. To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Summary of Plan

Debtors' Plan of Reorganization provides for the continued operations of the Debtors to make payments to its creditors as set forth in this Plan. Debtors seek to confirm a consensual plan of reorganization so that all payments to creditors required under the Plan will be made directly by the Debtors to its creditors. If the Debtors must seek confirmation of this Plan pursuant to § 1191(b), then the Subchapter V Trustee will act as payment administrator under the Plan.

**Best Interests of Creditor Test**

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtors' creditors. Accordingly, the proposed Plan must provide the Debtors' creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtors creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtors, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtors (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtors nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. **"Case"** shall mean this Chapter 11 case.

7. **"Claim"** shall mean any right to payment from the Debtors as of the date of entry of the Order Confirming Plan whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. **"Claimant"** shall mean the holder of a Claim.

9. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13. **"Court"** shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. **"Creditor"** shall mean any person having a Claim against Debtors.

15. **"Debt"** shall mean any obligation of Debtors, alone, and any obligation of Debtors and any other Person, to any Entity.

16. **"Debtors"** shall mean Boone Built Solutions, LLC (23-51763) and Dylan James Homes, LLC (23-41764).

17. **"Disbursing Agent"** shall mean the Reorganized Debtors or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18. **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

19. **"Entity"** shall include Person, estate trust, and governmental unit.

20. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22. **"Petition Date"** shall mean the date on which the Debtors filed this proceeding, December 20, 2023.

23. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified, or supplemented.

24. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtors post-petition in the ordinary course of business.

25. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

26. **"Reorganized Debtors"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

27. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtors, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

28. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

29. **"Substantial Consummation"** shall occur upon Reorganized Debtors' commencement of payments to creditors as provided in this Plan.

30. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtors under this Plan.

31. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE III
## REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTORS ARE AUTHORIZED BY THE DEBTORS OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTORS RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. INADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTORS IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTORS BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTORS'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTORS URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTORS DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTORS

### Financial History and Background of the Debtors

Dylan James Homes, LLC, started operations in December 2018. Dylan James Homes, LLC manages and operates a small residential construction business. Boone Built Solutions, LLC, started operations in August 2019. Boone Built Solutions, LLC, manages and operates a small commercial construction business. Boone Built Solutions, LLC, et al. elected to file a chapter 11 reorganization as the best means to resolve the current liabilities of the company and determine the secured portions of those creditors.

### Future Income and Expenses Under the Plan

The Debtors filed this case on December 20, 2023. Debtors proposed to pay allowed unsecured based on the liquidation analysis and cash available. Debtors anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "A" are projections of gross income, expenses, and operating income for the next five years. It is anticipated that after confirmation, the Debtors will continue in business. Based upon the projections, the Debtors believes it can service the debt to the creditors.

**Post-Confirmation Management**

The Debtors are currently owned 100% by Dylan J Boone who is the managing member. Mr. Boone will remain managing member and retain his 100% ownership interest going forward.

## ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

The Debtors manage and operate a small residential and commercial construction business. Boone Built Solutions, LLC, et al.'s assets include its accounts receivable and cash on hand, office furniture, vehicles and equipment. There are fully secured creditors as to this property based on the liquidation analysis and UCC filings. Any secured creditor not treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtors' assets is attached hereto as Exhibit "B".

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtors will continue operating its business. The Debtors' Plan will break the existing claims into six classes of Claimants. These claimants will receive cash repayments over a period of time beginning on or after the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtors. On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants Allowed Administrative Claims of Professionals and Subchapter V Trustee (These claims are unimpaired)** These claims will be paid in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtors' case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $35,000.00. The Class 1 Claimants are not impaired under this Plan.

8

**Class 2 Claimant Priority Tax Claim (This claim is impaired)** Allowed Priority Claim is for WT-FICA and CORP-INC taxes. The Internal Revenue Service claim is a priority debt, and the amounts are based on returns and estimated returns and will be paid over the plan term. The following class contains Debtors' tax priority claim for pre-petition amounts and the proposed treatment under the Plan:

**2-1 Internal Revenue Service** has a priority tax claim in the amount of $26,304.46 (No Claim Filed). Debtors will pay the priority claim amount of $26,304.46 at 9.50% interest per annum in monthly installments and the claim will be paid in full in 60 equal monthly payments. The payments will be $552.44 per month with the first monthly payment being due and payable on the 15th day of the first full calendar month following the effective date of the plan. In the event this debt is no longer owed, Debtors will not make any disbursements to the Internal Revenue Service.

**Class 3 Claimants – Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtors' bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtors' secured pre-petition claim and the proposed treatment under the Plan:

**3-1 Santander Consumer USA aka Chrysler Capital (Claim No. 1-1; 23-51763)** claim in the amount of $34,428.62 is secured by a 2019 Dodge Ram 2500 Truck. Debtors propose to pay the secured claim of Santander Consumer USA's claim in the amount of $34,428.62 at 9.50% over 5 years in 60 equal monthly payments at $723.07 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**Class 4 Claimants – Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtors' bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtors' secured pre-petition claim and the proposed treatment under the Plan:

**4-1 James and Crystal Bell Trust (Case No. 23-51763)** has a secured claim amount of $120,000.00. The James and Crystal Bell Trust is a post-petition secured debt incurred by the Debtor pursuant to an order entered on January 18, 2024 (Docket No. 54). This puts this secured claim in Lien Position 1. Therefore, Debtors proposes to pay the secured portion of the James and Crystal Bell Trust's claim in the amount of $120,000.00 at 5.50% over 5 years in 60 equal monthly payments at $2,292.14 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-2 U.S. Small Business Administration aka SBA (Claim No. 4-1; 23-51763)** has a secured claim amount of $233,713.78. The SBA asserts it is fully secured by the Debtors business property pursuant to a UCC Lien that was recorded on April 12, 2021, which appears to put this claim in Lien Position 2. Debtor will pay per the terms of the original secured note as to the SBA. The current monthly payment is $1,049.00 at 3.75% per annum.

**4-3 U.S. Small Business Administration aka SBA (Claim No. 3-1; 23-41764)** has a secured claim amount of $128,310.21. The SBA asserts it is fully secured by the Debtors business property pursuant to a UCC Lien that was recorded on August 11, 2021, which appears to put this claim in Lien Position 3. Debtor will pay per the terms of the original secured note as to the SBA. The current monthly payment is $626.00 at 3.75% per annum.

**4-4 Prosperum Capital Partners LLC (Claim No. 3-1; 23-51763)** has an alleged secured claim in the amount of $139,140.37. Prosperum Capital Partners LLC asserts it is fully secured by the Debtors' business property pursuant to a UCC Lien that was recorded on October 12, 2023, which appears to put this claim in Lien Position 4. Therefore, this claim is fully under secured and will be treated in Class 5 of this Plan.

**Class 5 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than the 1st day of the first full calendar month following 30 days after the effective date of the plan and continuing every year thereafter on a monthly basis at 0.00% per annum. Debtors will distribute up to $383,517.98 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan, includes the under-secured claim portions. The Debtors' General Allowed Unsecured Claimants will receive 100% of their allowed claims under this plan. See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 100% of Total Claim | Monthly Distribution |
|---|---|---|---|
| | | | |
| **Dell Financial Services (Claim No. 2-1; 23-51763)** | $15,028.77 | $15,028.77 | $250.48 |
| **Frost National Bank*** | $500.00 | $500.00 | $8.34 |
| **LOC Hybrid-Rapid Finance** | $55,000.00 | $55,000.00 | $916.67 |

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 100% of Total Claim | Monthly Distribution |
|---|---|---|---|
| Nate Bell | $140,000.00 | $140,000.00 | $2,333.33 |
| Prosperum Capital Partners LLC (Claim No. 3-1; 23-51763) | $139,140.37 | $139,140.37 | $2,319.01 |
| Vista Point Services (Claim No. 2-1; 23-51764) | $29,448.84 | $29,448.84 | $490.81 |
| Totals: | $383,517.98 | $383,517.98 | $6,318.64 |

\*Debtor scheduled these creditors in a greater amount than is listed in the Class 5 table. The Debtor will pay up to the amount listed for these claimants in Class 5, less any amount that may have been received outside the Plan that reduces Debtor's obligation to these claimants.

**Class 6 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain ownership in the Debtors. Class 6 Claimants are not impaired under the Plan.

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was February 28, 2024. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

11

**Standing.**

Following the Effective Date, the Debtors shall have standing to object to Claims.

**Objection Deadline.**

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtors may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtors may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

**Allowance of Claims.**

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.  Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtors deem appropriate.

B. <u>Binding Effect of Plan</u>.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtors, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C. <u>Vesting of Assets</u>.

Upon the Effective Date, all assets of the Estate shall vest in the Debtors, except as otherwise provided in the Plan.

D. <u>Discharge</u>.

1. <u>Consensual Plan</u>

A consensual plan is one in which the Debtors has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtors' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtors will not be discharged from any debt imposed by this Plan.

2. <u>Non-consensual Plan</u>

A non-consensual plan is one in which the Debtors has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtors is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtors will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtors' Plan is confirmed under § 1191(b), Debtors will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtors will not be discharged from any debt: (a) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

    E.    <u>Injunction Against Interference with Plan</u>.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtors.

    F.    <u>Payments under the Plan</u>.

Regardless if the Debtors confirms the Plan pursuant to § 1191(a) or (b) of the Bankruptcy Code, Debtors shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim. Debtors asserts that cause exists to allow the Debtors to make all Plan payments as this will reduce administrative costs and provide assurance the Debtors is better able to monitor and maintain its cash flows.

## ARTICLE IX
## MECHANICS/IMPLEMENTATION OF PLAN

Debtors anticipate the continued operations of the business to fund the Plan.

All guarantees and other obligations shall be deemed modified to reflect the restructuring of the primary obligations under the Plan. If the plan is confirmed, a creditor may not enforce liability under a guaranty or other third-party claim unless the Debtor defaults under the Plan for that creditor. In the event of default, only the amount owing under the Plan shall be recovered from the guarantor. This provision is intended to apply to creditors who had previously recovered judgments against the guarantor.

## ARTICLE X
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtors believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtors believe the Plan to be feasible.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

# ARTICLE XII
## ALTERNATIVES TO DEBTORS'S PLAN

If the Debtors' Plan is not confirmed, the Debtors' bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtors for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtors owes approximately $35,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $465,433.59 (includes claim objection creditor). The Debtors' assets include funds in the bank, office equipment, inventory, and accounts receivable. Unsecured creditors are receiving at least 53.71% of their claim if not more under the terms of the Plan.

A liquidation analysis is attached hereto as Exhibit "B".

# ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

# ARTICLE XIV
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtors to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtors. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive
Suite 1150
Houston, Texas 77036-3300

15

The Debtors will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

# ARTICLE XV
# DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

Releases of Claims by Holders of Claims: Except as otherwise specifically provided for herein, upon the entry of the Confirmation Order (a) each Person that votes to accept the Plan or is presumed to have voted for the Plan pursuant to Section 1126(f) of the Bankruptcy Code; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the entry of the Confirmation Order, each Entity or Person, that has held, holds, or may hold a Claim or interest (hereinafter a "Release Obligor"), in consideration for the obligations of Debtors and Reorganized Debtors under the Plan and the case, shall have conclusively, absolutely unconditionally, irrevocably and forever, released and discharged Debtors, Maxwell Rucker personally from any Claim or claim of action existing as of the entry of the Confirmation Order arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to the Claim or claim for relief of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that this provision shall not release Debtors from any cause of action held by a Governmental entity existing as of the entry of the Confirmation Order based (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, or (v) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security act of 1974, as amended.

## ARTICLE XVI
## RISKS TO CREDITORS UNDER THE DEBTORS'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtors that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTORS

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtors. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

The Debtors has evaluated potential claims which may be brought. The Debtors is unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: March 19, 2024

Respectfully submitted,

Boone Built Solutions, LLC, et al.

By: */s/Dylan J. Boone*
Dylan J. Boone, Owner